John I. Morrill v. Commissioner.
Morrill v. Commissioner
Docket No. 12687.
United States Tax Court
1949 Tax Ct. Memo LEXIS 259; 8 T.C.M. (CCH) 163; T.C.M. (RIA) 49033; February 21, 1949
*259 Scott P. Crampton, Esq., and Geo. E. H. Goodner, Esq., Munsey Bldg., Washington, D.C., for the petitioner. Frank M. Thompson, Jr., Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves income and victory tax deficiencies for 1943 and 1944, in the respective amounts of $18,055.91 and $7,708.92. The year 1942 is also under consideration because of the provisions of the Current Tax Payment Act of 1943. The entire deficiencies for both years result from the respondent's determination that the petitioner's daughter was not a partner in his business, and that the income therefrom is all taxable to the petitioner. The correctness of this determination is the only issue before us. Findings of Fact The petitioner is a resident of Mobile, Alabama. He filed his income tax return for the years involved with the collector for the district of Alabama. In 1919 the petitioner acquired ownership of a wholesale and retail hardware and marine supply business located at Mobile, Alabama, which he thereafter operated as a sole proprietorship under the name of "A. H. McLeod & Company." In the fall of 1941 the petitioner undertook to *260 make his daughter, Mary Morrill Jackson, a partner in the business. The daughter, an only child, was then 25 years of age. She had been married and divorced and was living with the petitioner. She had no children. To effectuate the partnership, the petitioner, on December 31, 1941, executed an assignment to the daughter of a one-fourth undivided interest in the A. H. McLeod & Company business, including the accounts receivable, inventory, good will, and all other assets. The petitioner reported the gift in a gift tax return which he filed for 1941 at a value of $28,797.21. The return showed no gift tax due. On the same date that the above-mentioned assignment was made, the petitioner and his daughter executed a partnership agreement setting forth the terms under which they proposed to operate the business as partners. Under this agreement, the petitioner was to have the active management of and control over the business and was required to sign all checks, notes, and other writings pledging the credit ofr the firm. He was to have a three-fourths interest in the business, and the income therefrom, and his daughter a one-fourth interest. Both the profits and losses were to be shared *261 by them in that proportion. No other capital was paid into the firm by either the petitioner or his daughter. Due to ill health, the daughter never took any part in the operation of the business of A. H. McLeod & Company. She died in 1947 of Bright's disease. During the existence of the alleged partnership, from January 1, 1942, to the date of the daughter's death, the profits of the business were shown in the firm's books and reported in its partnership returns as belonging to and being distributable to the petitioner and his daughter in the proportions of three-fourths and one-fourth, respectively. The following amounts were shown as credits to the daughter's account and withdrawals made by her: Calendar
Amount
Year
Earnings
Withdrawn
1942
$18,602.23
$ 4,031.88
1943
18,530.24
31,372.98
1944
10,390.83
9,266.48
1945
11,845.21
2,504.03
1946
11,402.38
6,004.70
1947 (3 months)
2,583.96
987.57
The daughter received $100 a month, regularly, on a drawing account and from time to time made other withdrawals, which were charged to her in the books. In 1943 a residence was purchased in the daughter's name at a cost of approximately $16,000. She *262 and her father and mother lived together in the residence until her death. In an audit made by the United States Government in connection with the petitioner's, or A. H. McLeod & Company's, cost plus war contracts with agencies of the Government the petitioner was allowed a salary of $15,000 per year. There was no change in the operation of the business after the execution of the partnership agreement. The petitioner continued to manage it as a sole proprietor. It was not the intention of either the petitioner or his daughter that they should conduct the business as a bona fide partnership. Opinion LEMIRE, Judge: The petitioner's claim for recognition of the alleged partnership between him and his daughter rests entirely upon her contribution to the business of the one-fourth interest which he gratuitously assigned to her for the purpose of making her a partner. The daughter invested none of her own funds in the business and took no part whatever in its conduct. On the evidence we cannot find that either she or her father ever intended that they should join in conducting the business as a bona fide partnership. Rather, it is indicated that their purpose was to make a division *263 of the profits of the business without any substantial effect upon its operation. Under the decisions of the Supreme Court in , and , and other numerous cases of like import, such as , affd., , certiorari denied, ; , affd., , certiorari denied, ; promulgated January 24, 1949, recognition of the partnership for income tax purposes must be denied. The petitioner argues in the alternative that in the event the partnership is not recognized the profits of the business should be apportioned between him and his daughter on the basis of their respective capital interests, after determination of the amounts of profits attributable to his personal services and those attributable to capital. He contends that 30 per cent of the profits should be attributable to his services and 70 per cent to capital. That, in effect, would require an allocation of profits to a person on *264 account of capital contributed by, or originating with, another person. No case is cited and none has been found to support such a principle. The petitioner submits that this principle has been recognized "in part" in , reversed, , and . In both of these cases, however, as the petitioner points out, the allocation of profits to the taxpayers' wives was based on capital which the wives had contributed out of their own separate funds. The distinction between those cases and the instant case is, we think, decisive. Since the daughter here made no contribution of her funds to the business, we see no justification for allocating to her any of the profits as a return on her capital. Decision will be entered for the respondent.